## 1UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Todd Boggis,                                    File No. 22-CV-02576 (JMB/LIB)

        Plaintiff,

v.

        **ORDER**

City of Moorhead, Officer J. Hanson, Officer
T. Hennen, Officer J. Fildes, Officer B.
Kvam, Officer S. Van Dyke, Officer B.
Heide, and Sergeant C. Martin, *in their
individual and official capacities*,

        Defendants.

---

Eric A. Rice, Law Office of Eric A. Rice, LLC, St. Paul, MN; and Paul J. Bosman, PJB Law, St. Paul, MN, for Plaintiff Todd Boggis.

Ashley Marie Ramstad, Jason M. Hiveley, and Michael Conlin-Brandenburg, Iverson Reuvers, Bloomington, MN, for Defendants City of Moorhead, Officer J. Hanson, Officer T. Hennen, Officer J. Fildes, Officer B. Kvam, Officer S. Van Dyke, Officer B. Heide, and Sergeant C. Martin.

---

    This matter is before the Court on Defendants City of Moorhead's, Officer J. Hanson's, Officer T. Hennan's, Officer J. Fildes's, Officer B. Kvam's, Officer S. Van Dyke's, Officer B. Heide's, and Sergeant C. Martin's (together, Defendants) motion for summary judgment. (Doc. No. 32.) In this action, Plaintiff Todd Boggis brings claims under 42 U.S.C. § 1983 and Minnesota state law, alleging that Moorhead Police Officer Jonathan Hanson used excessive force in violation of the Fourth Amendment and committed assault and battery in violation of Minnesota state law. (Doc. No. 1.) For the reasons explained below, the Court grants Defendants' motion and dismisses the action.

1

# BACKGROUND

On November 3, 2019, Moorhead Police Officers Jonathan Hanson and Tanner Hennan responded to an apartment building in Moorhead, Minnesota, on a report received by 911 that two apparently intoxicated but unarmed men were fighting in the apartment complex's hallway. (Doc. No. 35-1 ¶ 1.) The caller reported that the men were no longer physically fighting but they continued to verbally spar. (*Id.*)

Hanson and Hennen entered the apartment complex from its north side. (Doc. No. 35-1 at ¶ 2; Doc. No. 35-2 at 38:10–15.) The officers found four residents congregated at the far end of a hallway. One of the residents matched the description of one of the fighting men, later identified as Boggis. (Doc. No. 35-1 ¶ 2; Doc. No. 35-2 at 40:2–40:6.) Hanson approached the group and requested that the three uninvolved witnesses walk to the end of the hallway so that he could speak with Boggis. (Doc. No. 35-1 ¶ 2.) At the time, Boggis was seated on the hallway floor "being quiet." (*Id.* ¶ 3.)

Hanson's audio recorder from the incident captures Boggis telling Hanson that all he wanted to do was to "go home" but that "he wouldn't let me go home." (Doc. No. 35-3 at 2:00–2:03.) Boggis was visibly agitated and explained that he "live[s] in the middle of the hallway" and "pay[s] a lot of money to live [t]here." (*Id.*) As Hanson continued to question him, Boggis grew more confrontational, demanding that Hanson provide his name, badge number, and training. (*Id.* at 2:04–2:11.) Hanson replied that he would provide Boggis that information, but he first wanted to hear his name. Boggis replied, "My name is Todd Boggis, you got a problem with that?" (*Id.* at 2:21–2:23.) Hanson asked Boggis why he was so angry, to which Boggis replied, "These motherf*****s come up all

2

and they f***ing jumped me." (*Id.* at 2:29–2:31.)  A woman's voice can be heard in the background sarcastically replying, "Oh yeah, we all jumped ya." (*Id.* at 2:31–2:33.)  At that point, according to Hanson's report, Boggis began to run down the hallway, in the direction of the woman and the other witnesses.  (Doc. No. 35-1 ¶ 3.)  Boggis, for his part, claims that he was running to the front door of his apartment, which was in the same direction.  (Doc. No. 35-5 at 53:24–54:2.)  Hanson can be heard on the recording shouting, "Hey guys—stop, *stop*."  (Doc. No. 35-3 at 2:34–2:38.)  Hanson testified that, because Boggis did not follow his verbal commands and he feared that Boggis was going to harm the bystanders, Hanson ran after Boggis and forced him to the ground.  (Doc. No. 35-2 at 52:10–53:15; 57:1–16.)  Hanson stated in his report that he considered performing an arm-bar takedown, but that he determined he was unable to properly execute the technique because Boggis was running.  (Doc. No. 35-1 ¶ 3; Doc. No. 35-2 at 54:18–55:21.)  Instead, Hanson wrapped his arms around Boggis's midsection and brought him to the floor.  Hanson admits that, in the process, he fell on Boggis, which subjected Boggis to the impact of his bodyweight.  (Doc. No. 35-1 ¶ 3; Doc. 35-2 at 58:12–15.)

Immediately following the takedown, Boggis began complaining of pain in his right knee.  (Doc. No. 35-3 at 2:39–41.)  A medical examination revealed that Boggis suffered a fracture in his right femur.  (Doc. No. 35-6 at 6.)  Boggis testified that he has been unable to walk unassisted since the injury, that he has had to undergo several surgeries, and that he is in "daily pain" as a result of the incident.  (Doc. No. 35-5 at 4:21, 68:5–14, 78:17–3.)

On October 14, 2022, Boggis filed his Complaint. (Doc. No. 1.) He alleges that Hanson's use of force against him was in violation his constitutional rights under 42 U.S.C. § 1983 that Hanson committed assault and battery against him.[1]

## DISCUSSION

Defendants have moved for summary judgment on all claims. (Doc. No. 32.) As a threshold matter, courts grant motions for summary judgment if there are no genuine disputes as to any material fact. Fed. R. Civ. P. 56(a). A fact is "material" if its resolution might affect the outcome of the suit under the governing substantive law. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). A factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, courts view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials" but must identify "specific facts which create a genuine issue for trial." *Krenik v.*

---

[1] In the five-count Complaint, Boggis also brought a section 1983 claim against other officers (i.e., officers who are not Hanson) (Count II) and a claim of negligence against certain responding officers (Count V). However, after receiving Defendants' motion, Boggis concedes that discovery has yielded facts that support summary judgment in his opponents' favor on Counts II and V. Thus, the remaining claims for the Court's analysis on Defendants' summary judgment motion are Count I (section 1983 claim against Hanson) and Counts III and IV (assault and battery claims against Hanson).

*Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Moreover, summary judgment is properly entered against parties who "fail[] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  With this standard of review in mind, the Court addresses each of the remaining claims in turn.

## I.    QUALIFIED IMMUNITY FROM SECTION 1983 CLAIM

Defendants first argue that qualified immunity shields Hanson from liability for the conduct underlying Boggis's section 1983 claim.  The Court agrees and grants Defendants' motion for summary judgment because no binding legal authority clearly establishes Boggis's right to be free from Hanson's use of force under the circumstances.

In general, the doctrine of qualified immunity protects government officials from section 1983 liability "unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004).  This immunity shields all government officials, except for "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphasis added).  As a result, officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).

Qualified immunity is an affirmative defense, and at the summary judgment stage, plaintiffs can overcome an opponent's claim of qualified immunity only if they supply each of the following two required elements: (1) evidence to show that "the officer's conduct

5

violated a constitutional right," and (2) legal authority (and evidence to support necessary underlying facts) that "the right was clearly established" in light of "information [the government official] possessed at the time of the alleged violation." *Littrell*, 388 F.3d at 582–83 (quotation omitted). To satisfy the second element, sufficient legal authority must have existed at the time of the alleged violation to "place the constitutional question beyond debate." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015); *see also Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013) (concluding that the second prong can be established if the plaintiff identifies caselaw that "gave [the officer] fair warning that his alleged treatment of [the plaintiff] was unconstitutional" (quotation omitted)).

Though it is the province of the factfinder to "determine disputed predicate facts" in this analysis, the ultimate "question of qualified immunity is one of law for the [C]ourt." *Littrell*, 388 F.3d at 584–85; *see also Wright v. United States*, 813 F.3d 689, 696 (8th Cir. 2015) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'" (quotation omitted)). In addition, the Court has discretion to decide whether one or both prongs are satisfied and may do so in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Boggis is correct that the Fourth Amendment secures an individual's right to be free from unreasonable force. *Ledbetter v. Helmers*, No. 24-1427, 2025 WL 996701, at *4 (8th Cir. Apr. 3, 2025). This general proposition, however, does not clearly establish a right to be free from the exertion of force given the particular undisputed circumstances of

6

this case, including the fact that Boggis was running in a threatening manner towards the group of bystanders and the fact that Boggis disobeyed a law enforcement officer's commands to stop. Given these circumstances, Boggis does not identify caselaw that "place[s] the constitutional question beyond debate." *See Hollingsworth*, 800 F.3d at 989.

To the contrary, as of the date of the incident, several cases in this Circuit supported an officer's use of force to take down a suspect who posed an active threat to bystanders or who failed to comply with an officer's commands. For example, in *Hosea v. City of St. Paul*, 867 F.3d 949 (8th Cir. 2017), the Eighth Circuit affirmed a police officer's use of a tackle maneuver, similar to the one at issue in this case, to bring the plaintiff to the ground because officers reasonably believed that the plaintiff posed a threat to another nearby individual and because the plaintiff had disobeyed the arresting officer's commands. *Id.* at 957–59. Likewise, in *Ehlers v. City of Rapid City*, 846 F.3d 1002 (8th Cir. 2017), the Eighth Circuit concluded that an officer's use of force in performing a takedown procedure, similar to the one used in this case, was objectively reasonable because the plaintiff had ignored officer's commands and continued walking past the officer. *Id.* at 1011; *see also Ledbetter*, 2025 WL 996701, at *3 (suspect was threatening the safety of others); *McDaniel v. Neal*, 44 F.4th 1085, 1091 (8th Cir. 2022) (arrestee was running away from officers); *Kelsay v. Ernst*, 933 F.3d 975, 980 (8th Cir. 2019) (plaintiff resisted officer's commands to stop). Given these cases, as Boggis ran toward the bystanders and failed to heed

commands to stop, a reasonable officer in Hanson's position would not have reason to believe that his takedown of Boggis violated a constitutional right.

Boggis relies on *Stockton v. Auren*, No. 07-CV-556 (JRT/FLN), 2008 WL 1994992 (D. Minn. May 5, 2008) to support his argument that there is clearly established caselaw prohibiting the use of force. In that case, the Court denied defendants' motion for summary judgment on plaintiff's claims that law enforcement officers used excessive force when they used an arm-bar maneuver to take down the plaintiff. The underlying factual circumstances in *Stockton*, however, are distinguishable from what the parties agree occurred here. In *Stockton*, the plaintiff "remained docile throughout the entire encounter with the officers," stood still, and never attempted to flee. 2008 WL 1994992, at *3–7. Moreover, the officers in *Stockton* had no reason to conclude that the plaintiff posed a threat to others. *Id.* In contrast, an agitated Boggis disobeyed law enforcement officer's commands to stop and Boggis ran directly towards a woman with whom he had exchanged terse words moments before. Given these facts, *Stockton* is not comparable to this case. *Cf. Ledbetter*, 2025 WL 996701, at *7 ("Decisions concerning the use of force against suspects who were not threatening are insufficient to constitute clearly established law that governs an officer's use of force against a suspect who was threatening.") (cleaned up); *Karels v. Storz*, 906 F.3d 740, 747 (8th Cir. 2018) (plaintiff was "a nonviolent, nonthreatening misdemeanant who was not actively resisting arrest or attempting to flee"); *Michael v. Trevena*, 899 F.3d 528, 533 (8th Cir. 2018) (plaintiff was "neither fleeing nor actively resisting arrest and … posed no threat to the security of the officers or the public"); *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) (plaintiff was "a

8

nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"); *Shannon v. Koehler*, 616 F.3d 855, 864 (8th Cir. 2010) (plaintiff was not fleeing, not resisting, and not threatening).

Because the caselaw relied on by Boggis is distinguishable and because several other, more analogous cases permit Hanson's conduct, Boggis has not identified sufficient legal authority to "place the constitutional question beyond debate." *See Hollingsworth*, 800 F.3d at 989. Therefore, Hanson is protected by the doctrine of qualified immunity, and the Court grants Defendants' motion for summary judgment as to Count I.[2]

## II.    OFFICIAL IMMUNITY FROM STATE TORT CLAIMS

Boggis also brings assault and battery claims against Hanson and Hanson's employer, the City of Moorhead. Under Minnesota law, police officers are immune from suits regarding alleged state law violations that occur in the course of their official duties when such duties "require the exercise of judgment or discretion," unless the official acted "willful[ly] or malicious[ly]." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 902 (8th Cir. 2020) (citing *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 600 (Minn. 2016)).

The parties agree that Hanson's takedown of Boggis was a discretionary act. (Doc. No. 37 at 10; Doc. No. 34 at 25.) However, they disagree as to whether Hanson acted with malice. For purposes of official immunity, malice is defined as "the willful violation of a known right." *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 465 (Minn. 2014); *see*

---

[2] Because the Court concludes that Hanson did not violate a clearly established right, the Court will not analyze the other prong of the qualified immunity test: whether Hanson's use of force violated Boggis's constitutional rights under the Fourth Amendment. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*also State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994) (explaining that the official immunity analysis under Minnesota state law is "less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions").

In cases such as these, the official immunity analysis under state law mirrors the qualified immunity analysis under federal law. *Yang v. City of Brooklyn Park*, 194 F. Supp. 3d 865, 874 (D. Minn. 2016) (concluding that, under similar circumstances, the "official-immunity analysis under Minnesota state law does not differ in any material respect from qualified-immunity analysis under federal law"); *see also Smith v. City of Brooklyn Park*, 757 F.3d 765, 775 (8th Cir. 2014); *McClennon v. Kipke*, 821 F. Supp. 2d 1101, 1111 (D. Minn. 2011); *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999); *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). Therefore, for the same reasons as those stated above, the Court finds that Boggis cannot demonstrate that Hanson violated a "known right" when he tackled Boggis to the ground as Boggis ran down the apartment complex hallway. Because Hanson's actions did not violate a known right, he is protected from Boggis's tort claims by official immunity.

Because Hanson is officially immune from tort claims against him, so too is the City of Moorhead. *See Hayek v. City of St. Paul*, 488 F.3d 1049, 1057 (8th Cir. 2007) (explaining that, when the officers' discretionary actions are "entitled to official immunity, the City has no vicarious liability"); *Vassallo*, 842 N.W.2d at 465 (stating that the

10

government entity's liability "stands or falls with [the officer's] immunity"). Thus, the Court grants Defendants' motion and dismisses Counts III and IV.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Defendants City of Moorhead's, Officer J. Hanson's, Officer T. Hennan's, Officer J. Fildes's, Officer B. Kvam's, Officer S. Van Dyke's, Officer B. Heide's, and Sergeant C. Martin's motion for summary judgment (Doc. No. 32) is GRANTED; and

2.  This matter is dismissed WITHOUT prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 23, 2025                                          /s/ *Jeffrey M. Bryan*
                                                             Judge Jeffrey M. Bryan
                                                             United States District Court